UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| TRACEY HICKINS,<br><br>     Petitioner,<br><br> v.<br><br>CAROLYN W. COLVIN,[1]<br>Acting Commissioner of Social Security<br>Administration,<br><br>     Respondent. | Case No. 1:11-cv-00631-CWD<br><br>**MEMORANDUM DECISION AND ORDER** |

## INTRODUCTION

Currently pending before the Court is Petitioner Tracey Hickins's request for review of the Respondent's denial of social security benefits, filed on February 25, 2008. (Dkt. 1.) The Court has reviewed the Petition and the Answer, the parties' memoranda, and the administrative record ("AR"), and for the reasons that follow, will affirm the decision of the Commissioner.

## BACKGROUND

Tracey Hickins ("Petitioner") first applied for Disability Insurance Benefits and Supplemental Security Income on October 12, 2005, alleging disability beginning October 5, 2005, from her mixed connective tissue disease and lupus. This application was denied initially

---

[1] Carolyn W. Colvin is substituted for Michael J. Astrue. Colvin became the Acting Commissioner of Social Security Administration on February 14, 2013.

**MEMORANDUM DECISION AND ORDER - 1**

and on reconsideration. A hearing was conducted on May 17, 2007, before Administrative Law Judge ("ALJ") James Pileggi. ALJ Pileggi heard testimony from Petitioner and from vocational expert Frances Kinley. (AR 268.)

Petitioner petitioned the Appeals Council for review of the ALJ's decision on December 15, 2007, which was denied on December 21, 2007. Having exhausted her administrative remedies, the Petitioner timely filed an appeal with the United States District Court for the Western District of Pennsylvania. (AR 280.)

Petitioner's claim file was lost, along with the recording of the May 2007 hearing. Therefore, on September 9, 2008, the case was remanded pursuant to Sentence Six, for a *de novo* hearing to complete the record and for the ALJ to render a new decision.

In the interim, Petitioner filed a new disability application on December 14, 2007, again alleging disability beginning October 5, 2005, from her mixed connective tissue disease and lupus. This application was denied on February 15, 2008, and a request for hearing was filed on April 1, 2008. A new hearing, again before ALJ Pileggi, was held on November 14, 2008. ALJ Pileggi heard testimony from Petitioner and vocational expert William Reed. At this hearing, ALJ Pileggi considered the December 2007 application as well as the remand of the 2005 application. The ALJ denied Petitioner's claim on January 15, 2009, finding Petitioner was not disabled for the period October 6, 2005, through the date of his decision. (AR 12.)

The matter pending before the Western District of Pennsylvania was not reopened until September 14, 2011. Petitioner had, however, moved to Idaho in 2009. Consequently, the matter was transferred to this Court on September 14, 2011. This matter was delayed further because Petitioner initially appeared pro se, but later obtained pro bono counsel on July 23, 2012.

After moving to Idaho, Petitioner filed a third application for benefits and was awarded

**MEMORANDUM DECISION AND ORDER - 2**

benefits with an onset date of July 2009. She is currently receiving disability benefits. Petitioner

filed also a claim for 100% unemployability disability benefits from the Veteran's

Administration (VA) and was awarded those benefits on November 19, 2010, retroactive to

October 2005. However, these facts were not before ALJ Pileggi at the time of the second

hearing in November of 2008, nor was the record supplemented before the Commissioner to

include this information.

Petitioner was born in August of 1970. At the time of Petitioner's alleged onset date,

October 2005, she was 35 years of age. Petitioner completed high school and two years of

college, studying medical transcription. Petitioner's prior work experience includes work as an

accounting assistant, medical records clerk, retail cashier, office helper, secretary, and a

municipal tax collector.

## SEQUENTIAL PROCESS

The Commissioner follows a five-step sequential evaluation for determining whether a

claimant is disabled. *See* 20 C.F.R. §§ 404.1520, 416.920. At step one, it must be determined

whether the claimant is engaged in substantially gainful activity. The ALJ found Petitioner had

not engaged in substantial gainful activity since her alleged onset date of October 2005. At step

two, it must be determined whether the claimant suffers from a severe impairment. The ALJ

found Petitioner's mixed connective tissue disorder, fibromyalgia, sleep apnea, chronic fatigue,

lupus, obesity, and Sjogren's syndrome severe within the meaning of the Regulations.

Step three asks whether a claimant's impairments meet or equal a listed impairment. The

ALJ found that Petitioner's impairments did not meet or equal the criteria for any listed

impairment. If a claimant's impairments do not meet or equal a listing, the Commissioner must

assess the claimant's residual functional capacity ("RFC") and determine, at step four, whether

**MEMORANDUM DECISION AND ORDER - 3**

the claimant has demonstrated an inability to perform past relevant work. The ALJ found the Petitioner did not retain the RFC to perform her past relevant work.

If a claimant demonstrates an inability to perform past relevant work, the burden shifts to the Commissioner to demonstrate at step five that the claimant retains the capacity to make an adjustment to other work that exists in significant levels in the national economy, after considering the claimant's residual functional capacity, age, education and work experience. The ALJ determined that Petitioner retained the RFC to perform sedentary work as defined in 20 C.F.R. 404.1567(a). As part of this determination, the ALJ found Petitioner could not perform any overhead reaching, constant fine and gross manipulation with her hands, or operate foot controls; could not crawl, kneel, climb or balance; and could not push or pull against resistance repeatedly. Given this RFC, the vocational expert identified that Petitioner could perform jobs such as surveillance system monitor, telephone operator, order clerk, and inspector – visual inspections.

ALJ Pileggi issued a decision finding Petitioner not disabled on January 15, 2009. Petitioner timely requested review by the Appeals Council, which denied her request for review on January 15, 2009. Petitioner appealed the final decision to this Court. The Court has jurisdiction to review the ALJ's decision pursuant to 42 U.S.C. § 405(g).

## STANDARD OF REVIEW

Petitioner bears the burden of showing that disability benefits are proper because of the inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); *see also* 42 U.S.C. §

**MEMORANDUM DECISION AND ORDER - 4**

1382c(a)(3)(A); *Rhinehart v. Fitch*, 438 F.2d 920, 921 (9th Cir. 1971). An individual will be determined to be disabled only if her physical or mental impairments are of such severity that she not only cannot do her previous work but is unable, considering her age, education, and work experience, to engage in any other kind of substantial gainful work which exists in the national economy. 42 U.S.C. § 423(d)(2)(A).

On review, the Court is instructed to uphold the decision of the Commissioner if the decision is supported by substantial evidence and is not the product of legal error. 42 U.S.C. § 405(g); *Universal Camera Corp. v. Nat'l Labor Relations Bd.*, 340 U.S. 474 (1951); *Meanel v. Apfel*, 172 F.3d 1111, 1113 (9th Cir. 1999) (as amended); *DeLorme v. Sullivan*, 924 F.2d 841, 846 (9th Cir. 1991). Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. 389, 401 (1971). It is more than a scintilla but less than a preponderance, *Jamerson v Chater*, 112 F.3d 1064, 1066 (9th Cir. 1997), and "does not mean a large or considerable amount of evidence." *Pierce v. Underwood*, 487 U.S. 552, 565 (1988).

The Court cannot disturb the Commissioner's findings if they are supported by substantial evidence, even though other evidence may exist that supports the petitioner's claims. 42 U.S.C. § 405(g); *Flaten v. Sec'y of Health and Human Servs.*, 44 F.3d 1453, 1457 (9th Cir. 1995). Thus, findings of the Commissioner as to any fact, if supported by substantial evidence, will be conclusive. *Flaten*, 44 F.3d at 1457. It is well-settled that, if there is substantial evidence to support the decision of the Commissioner, the decision must be upheld even when the evidence can reasonably support either affirming or reversing the Commissioner's decision, because the Court "may not substitute [its] judgment for that of the Commissioner." *Verduzco v. Apfel*, 188 F.3d 1087, 1089 (9th Cir. 1999).

**MEMORANDUM DECISION AND ORDER - 5**

When reviewing a case under the substantial evidence standard, the Court may question an ALJ's credibility assessment of a witness's testimony; however, an ALJ's credibility assessment is entitled to great weight, and the ALJ may disregard self-serving statements. *Rashad v. Sullivan*, 903 F.2d 1229, 1231 (9th Cir. 1990). Where the ALJ makes a careful consideration of subjective complaints but provides adequate reasons for rejecting them, the ALJ's well-settled role as the judge of credibility will be upheld as based on substantial evidence. *Matthews v. Shalala*, 10 F.3d 678, 679-80 (9th Cir. 1993).

### DISCUSSION

Petitioner contends the ALJ erred initially because he failed to follow the September 2009 remand instructions of the Federal Court in Pennsylvania and the Appeals Council. Specifically, Petitioner takes issue with ALJ Pileggi's conduct during the hearing, when he referred to the "last hearing," or "last time," and asked for updates, rather than taking evidence anew. Petitioner contends this was error, because the ALJ was instructed to conduct a *de novo* hearing and issue a new decision. Second, Petitioner contends the ALJ failed to give appropriate weight to the opinions of two of Petitioner's treating physicians, Drs. Hassan and Vaturi. And third, the Petitioner contends the ALJ erred in evaluating Petitioner's credibility about the severity of her pain when determining her RFC.

### 1.    Jurisdiction

Petitioner argues that the ALJ failed to conduct the hearing properly in accordance with the Appeals Council's remand order to conduct a *de novo* hearing. There are three points of error alleged. First, the ALJ asked Petitioner for an "update" of her condition since the time of the first hearing. Second, in his examination of the vocational expert, the ALJ referred to the previous determination of Petitioner's work history and activity, and asked whether the vocational expert

**MEMORANDUM DECISION AND ORDER - 6**

agreed. Finally, the ALJ summarized the prior vocational expert's opinion, and asked the vocational expert if he agreed with that assessment. Petitioner contends the above conduct constituted legal error.

Petitioner notes that the transcript of the first hearing was unavailable to the ALJ and the vocational expert at the second hearing, but the ALJ's written opinion, where his findings, RFC assessment, and the opinion of the prior vocational expert, was available. Further, the same evidence (medical records, earnings records, etc.) was part of the record. Contrary to Petitioner's characterization, the ALJ elicited testimony from Petitioner as to her current condition, (AR 738), summarized her testimony from the prior hearing and asked Petitioner if that was correct, (AR 739), and had Petitioner describe any new symptoms or progression of her disease, (AR 739—744). Concerning the questions posed to the vocational expert, the ALJ summarized the findings from the prior opinion (which were in the record as part of the written opinion), and elicited an opinion from the vocational expert.

Moreover, this Court lacks jurisdiction to review the ALJ's compliance with the Appeals Council's remand order.  "Federal courts only have jurisdiction to review the final decisions of administrative agencies. When the Appeals Council denied review of the ALJ's second decision, it made that decision final, and declined to find that the ALJ had not complied with its remand instructions." *Butler v. Astrue*, No. EDCV 08–1155 AGR, 2010 WL 342633  *3 n.1 (C.D. Cal. Jan. 29, 2010) (quoting *Tyler v. Astrue*, 305 Fed. Appx. 331, 332 (9th Cir. 2008)). *See also Farris v. Astrue*, No. 08–CV–3128–ST, 2009 WL 3497810 *5 (D. Or. Oct. 29, 2009) (court lacks jurisdiction "to review the ALJ's compliance with the Appeals Council's remand.").

Here, the Appeals Council denied review of the ALJ's second decision and did not make any findings that the ALJ had not complied with its November 14, 2008, remand instructions.

**MEMORANDUM DECISION AND ORDER - 7**

The ALJ's January 15, 2009, decision, therefore, became the final decision of the Commissioner. Accordingly, this Court concludes it lacks jurisdiction to review the ALJ's compliance with the Appeals Council's last remand.

### 2.   Physician Testimony

Ninth Circuit cases distinguish among the opinions of three types of physicians: (1) those who treat the claimant (treating physicians); (2) those who examine but do not treat the claimant (examining physicians); and (3) those who neither examine nor treat the claimant (nonexamining physicians). *Lester v. Chatter*, 81 F.3d 821, 830 (9th Cir. 1995). If the treating physician's opinion is not contradicted by another doctor, it may be rejected only for "clear and convincing" reasons. *Baxter v. Sullivan*, 923 F.2d 1391, 1396 (9th Cir.1991). If the treating doctor's opinion is contradicted by another doctor, the Commissioner may not reject the treating physician's opinion without providing "specific and legitimate reasons" supported by substantial evidence in the record for so doing. *Murray v. Heckler*, 722 F.2d 499, 502 (9th Cir.1983).

An ALJ is not required to accept an opinion of a treating physician if it is conclusory and not supported by clinical findings. *Matney ex rel. Matney v. Sullivan*, 981 F.2d 1016, 1019 (9th Cir. 1992). Additionally, an ALJ is not bound to a physician's opinion of a petitioner's physical condition or the ultimate issue of disability. *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989). If the record as a whole does not support the physician's opinion, the ALJ may reject that opinion. *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1195 (9th Cir. 2004). Items in the record that may not support the physician's opinion include clinical findings from examinations, conflicting medical opinions, conflicting physician's treatment notes, and the claimant's daily activities. *Id.*; *Bayliss v. Barnhart*, 427 F.3d 1211 (9th Cir. 2005); *Connett v. Barnhart*, 340 F.3d 871 (9th Cir. 2003); *Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595

(9th Cir. 1999). Also, an ALJ may reject a treating physician's opinion if it is based "to a large extent" on a claimant's self-reports that have been properly discounted as not credible. *Tommasetti v. Astrue*, 533 F.3d 1035, 1041 (9th Cir. 2008).

The two physicians' opinions discussed, and rejected, by the ALJ are from Dr. Hassan and Dr. Vaturi. Dr. Hassan treated Petitioner from May of 2006, and a January 2007 letter set forth his opinion that Petitioner "had problems" with her activities of daily living and performing her job, while her fibromyalgia had been resistant to therapy. (AR 19.) Petitioner further contends that the ALJ was required to request Dr. Hassan's chart notes for the relevant time period, which were not part of the record. The ALJ rejected Dr. Hassan's opinion because Petitioner had previously reported she was able to participate in activities of daily living, and Dr. Rothenberg, who had examined Petitioner, reported similar findings. Finally, the ALJ noted that Drs. Bacu and LaRochelle, who treated Petitioner also, did not note in their treatment notes that Petitioner's fibromyalgia was resistant to therapy.

Dr. Vaturi completed a Medical Source Statement in November of 2008 giving his opinion that Petitioner was unable to work because she could not sit, stand, or walk for even minimal periods in a work day, and was of the opinion that Petitioner had been disabled since 1991. The ALJ cited the lack of clinical documentation to support Dr. Vaturi's assessment, Petitioner's earnings activities since 1997 through 2005, and scant records of Petitioner's visits to Dr. Vaturi.

The ALJ's written determination contains a comprehensive summary of Petitioner's treatment history. (AR 17—19.) First, VA medical records from just prior to Petitioner's alleged onset date in 2005 indicate that Petitioner's pain was tolerable, and she had discontinued medication. (AR 128.) Further VA medical records for the period up through July of 2006

**MEMORANDUM DECISION AND ORDER - 9**

reported no significant warmth, synovitis, inflammation, restricted range of motion, or diminished strength. (AR 583-602.) On May 30, 2006, Petitioner reported she was "pain free." (AR 587.) These records, the ALJ noted, contradict the opinion of Dr. Hassan that Petitioner's fibromyalgia was resistant to therapy and also Dr. Vaturi's assessment that Petitioner was thoroughly disabled.

Next, the ALJ discussed Dr. Bacu's records. (AR 685-732.) Dr. Bacu treated Petitioner from June of 2008 to December of 2008, the same time period of Dr. Vaturi's assessment. Dr. Bacu noted "mild trigger points" (AR 691), and that she was "stable" on her medications, (AR 694); and, while she presented with diffuse aches and fatigue, Dr. Bacu continued to prescribe the same medication --- Prednisone 5mg---to continue treating Petitioner's symptoms. Dr. Bacu's records do not reflect that Petitioner was unable to sit, stand or walk throughout the day, but rather record that her disease was controlled with medication.

Dr. Rothenberg's treatment notes from the period July 2007 to October 2007 (AR 444—477)  indicate a stable disease that is "fairly well controlled," and that Petitioner on October 23, 2007, reported being able to do most activities of daily living other than reaching. (AR 470.) Dr. Rothenberg recorded his suggestion that Petitioner should engage in walking for exercise. (AR 459.)

Dr. LaRochelle's treatment notes (AR 478—489) between July of 2007 and November of 2007, while noting weakness, tenderness, and cramps, reported on June 3, 2008, that her examination was "unremarkable," except for "some fatigue and symptoms" related to Petitioner's mixed connective tissue disease. (AR 624.) Dr. LaRochelle noted Petitioner was stable at that time. At a second visit on March 4, 2008, Dr. LaRochelle noted that her symptoms were "unchanged." (AR 628.) Dr. LaRochelle encouraged Petitioner to "increase her exercise" as

**MEMORANDUM DECISION AND ORDER - 10**

well. (AR 628.) In other words, Dr. LaRochelle found no impediment to increased activity, and her assessment directly contradicts Dr. Vaturi's opinion that Petitioner could not walk at all throughout the day.

Finally, the ALJ noted that Petitioner had completed an activities questionnaire on November 14, 2005, wherein Petitioner reported she did the following: "grocery shopping, laundry, cooking, cleaning, normal housewife duties." (AR 103.) It was only when she did "more than usual" on a particular day that her symptoms flared up. (AR 103.) Petitioner argues that the same questionnaire reports extreme fatigue, and that Petitioner reported she did not perform any activities of daily living because of pain and fatigue on a daily basis. However, the ALJ noted that he observed Petitioner to be in no acute distress during the hearing, her answers on the questionnaire were inconsistent, and her physicians did not note that she reported problems to them. (AR 18.)

Petitioner asserts that the ALJ was required to obtain all of the treatment records from Dr. Hassan. An ALJ's duty to develop the record further is triggered only when there is ambiguous evidence or when the record is inadequate to allow for proper evaluation of the evidence. *Mayes v. Massanari*, 276 F.3d 453, 460 (9th Cir. 2001). Here, the record was neither ambiguous nor inadequate for the ALJ to properly evaluate the evidence. Further, Petitioner has had ample opportunity given the history of this case to request additional medical records to add to her record before the ALJ.

The Court's review indicates that the ALJ met the necessary burden for rejecting the opinions of both Drs. Hassan and Vaturi. Their opinions were contradicted by the evidence set forth above and discussed in the ALJ's opinion. The ALJ met his burden of setting forth specific, legitimate reasons based upon substantial evidence in the record by setting out a detailed

**MEMORANDUM DECISION AND ORDER - 11**

summary of the facts and conflicting clinical evidence, stating his interpretation, and making findings. *See Magallanes v. Bowen*, 881 F.2d 747, 753 (9th Cir. 1989). Petitioner makes much of the fact that there are indications in the treatment notes that could be interpreted in her favor. (Brief at 9, Dkt. 41.) But the Court cannot disturb the Commissioner's findings if they are supported by substantial evidence, even though other evidence may exist that supports Petitioner's claims.

### 3.   Credibility

The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving ambiguities. *Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998). The ALJ's findings must be supported by specific, cogent reasons. *Reddick*, 157 F.3d at 722. If a claimant produces objective medical evidence of an underlying impairment, an ALJ may not reject a claimant's subjective complaints of pain based solely on lack of medical evidence. *Burch v. Barnhart*, 400 F.3d 676, 680 (9th Cir. 2005). *See also Light v. Soc. Sec. Admin.*, 119 F.3d 789, 792 (9th Cir. 1997) (an ALJ may not discredit a claimant's subjective testimony on the basis that there is no objective medical evidence that supports the testimony). Unless there is affirmative evidence showing that the claimant is malingering, the ALJ must provide clear and convincing reasons for rejecting pain testimony. *Burch*, 400 F.3d at 680. General findings are insufficient; the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints. *Reddick*, 157 F.3d at 722.

The reasons an ALJ gives for rejecting a claimant's testimony must be supported by substantial evidence in the record. *Regennitter v. Comm'r of Soc. Sec. Admin.*, 166 F.3d 1294, 1296 (9th Cir. 1999). If there is substantial evidence in the record to support the ALJ's credibility finding, the Court will not engage in second-guessing. *Thomas v. Barnhart*, 278 F.3d

**MEMORANDUM DECISION AND ORDER - 12**

957, 959 (9th Cir. 2002).  When the evidence can support either outcome, the Court may not

substitute its judgment for that of the ALJ. *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999).

In evaluating credibility, the ALJ may engage in ordinary techniques of credibility

evaluation, including considering claimant's reputation for truthfulness and inconsistencies in

claimant's testimony, or between claimant's testimony and conduct, claimant's daily activities,

claimant's work record, and testimony from physicians and third parties concerning the nature,

severity and effect of the symptoms of which claimant complains. *Thomas v. Barnhart*, 278 F.3d

947, 958-59 (9th Cir. 2002).  Also, the ALJ may consider the location, duration and frequency of

symptoms; factors that precipitate and aggravate those symptoms; the amount and side effects of

medications; and treatment measures taken by the claimant to alleviate those symptoms.  *See*

Soc. Sec. Ruling 96-7p.

Here, ALJ Pileggi rejected Petitioner's pain testimony as not fully credible. Although

Petitioner reported severe fatigue, pain, and weakness, and that she needed assistance from her

family to complete her household chores, the ALJ found that, while Petitioner's symptoms could

be expected to produce pain, she was not precluded from all sedentary work. The ALJ

considered the medical evidence in the record, discussed above, indicating that Petitioner's

condition was stable and controlled on medication during this period; Petitioner needed no

narcotic or other medication stronger than Prednisone daily; Petitioner could walk without an

assistive device; and although Petitioner reported at the hearing that she could not perform

activities of daily living, her treating physicians noted otherwise. Two of her treating physicians

recommended walking for exercise. The ALJ noted also that he personally observed Petitioner

during the hearing, and that she "showed no signs of distress." (AR 18.)

Petitioner characterizes her medical reports as evidence of her "constant quest for

**MEMORANDUM DECISION AND ORDER - 13**

medical treatment and pain relief," but they could just as easily be characterized as continued

medical management of a chronic condition. Petitioner did not, during this time period, report

disabling pain to her care providers, and the record as a whole supports the ALJ's conclusion that

Petitioner's reports of disabling pain were not entirely credible.

### CONCLUSION

The Court will affirm the ALJ's decision that Petitioner was not disabled for the period

October 6, 2005, up through January 15, 2009. The ALJ's decision was supported by substantial

evidence in the record as a whole, and was not the product of legal error.

### ORDER

Based upon the foregoing, the Court being otherwise fully advised in the premises,

**it is hereby ORDERED that** the Commissioner's decision finding that the Petitioner is

not disabled within the meaning of the Social Security Act is **AFFIRMED** and that the

petition for review is **DISMISSED**.

Dated: **September 25, 2013**

Honorable Candy W. Dale
United States Magistrate Judge

**MEMORANDUM DECISION AND ORDER - 14**